IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ROBERT RAYMOND WILSON and | § | Case No. 04-11574 |
| STEVIE JANE WILSON | § | |
| | § | |
| Debtors | § | Chapter 13 |

EOD
09/30/2005

### MEMORANDUM OF DECISION[1]

This matter is before the Court to consider confirmation of the Debtors' First Amended Chapter 13 Plan proposed by the Debtors, Robert R. Wilson and Stevie Jane Wilson ("Debtors"), the Debtors in the above-referenced case. Ronald E. Stadtmueller, Chapter 13 Trustee, objected to the confirmation of the Plan on the grounds that the Debtors are not applying all of their projected disposable income for the first three years of the Plan, in contravention of 11 U.S.C. §1325(b)(1)(B).[2] At the conclusion of the hearing and after providing the parties an opportunity to submit post-hearing briefs, the Court took the matter under advisement. This memorandum of decision disposes of all issues pending before the Court.[3]

---

[1] This Memorandum of Decision is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other evidentiary doctrines applicable to the specific parties in this proceeding.

[2] Other confirmation objections raised by the Trustee were resolved prior to the hearing.

[3] This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §1334(b) and 28 U.S.C. §157(a). The Court has the authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (L), and (O).

**Background**

The Debtors, Robert R. Wilson and Stevie Jane Wilson, filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on November 1, 2004.  The Debtors seek to confirm their First Amended Chapter 13 Plan which proposes a monthly payment of $2,595.00 for a period of sixty (60) months, for a total gross sum of $155,700.00.  The case presents an unusual situation in which the Trustee is objecting to a plan which proposes to pay all creditors in full over a 60-month span.  The Trustee's objection is based upon the Debtors' alleged failure to dedicate all of their projected disposable income to the proposed plan for the first three years of the Plan, in contravention of 11 U.S.C. §1325(b)(1)(B).

In fact, there is no dispute that the Debtors could pay all creditors in full over a 36-month period by eliminating from Mr. Wilson's paycheck proposed monthly deductions of $222.93 for monthly 401(k) plan contributions and $561.10 for repayments of loans taken from the same 401(k) plan.  However, the Debtors assert that confirmation cannot be barred as a result of any alleged failure to meet the disposable income test because they have purportedly fulfilled the alternative requirements of §1325(b)(1)(A), though their proposed plan admittedly requires a period of sixty (60) months to accomplish that result. At the hearing, though not raised by the Trustee's objection, the Court also inquired as to whether the Debtors could demonstrate sufficient cause under §1322(d) to extend payments beyond the three-year period in the event that the provisions of §1325(b)(1)(B)

were applicable, when application of appropriate authorities regarding the dedication of disposable income under that subsection would result in a full payment to unsecured creditors within the 36-month period. At the conclusion of the hearing, the Court permitted the parties to submit post-hearing briefing. Upon receipt of the briefing, the Court took the matter under advisement.

## Discussion

In the context of considering confirmation of a Chapter 13 plan proposed by a debtor who is not engaged in business, 11 U.S.C. §1325(b) provides that:

> (b)(1) [i]f the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan —
>> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>> (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.
>
> (2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended —
>> (A) for the maintenance or support of the debtor or a dependent of the debtor....[4]

---

[4] If a debtor is engaged in business, §1325(b)(2)(B) also deletes from "disposable income" any income which must be expended "for the payment of expenditures necessary for the continuation,

The Debtors assert that the Court never reaches any analysis of §1325(b)(1)(B) because they have fulfilled the requirements of §1325(b)(1)(A). Admittedly the fulfillment of that subsection requires the term of the plan to be extended to sixty months. The Trustee asserts that "the unsecured creditors are being asked to allow the Debtors to divert a portion of their disposable income to be used to fund the Debtors' retirement and repay themselves back on a retirement loan while at the same time postponing the payment of the unsecured claims."

When considering the related issue of whether 401(k) loan repayments or contributions were reasonably necessary for the support or maintenance of a debtor, this Court has previously concluded that it would be "difficult to imagine a scenario under which a debtor's plan proposal to repay a pension 'loan' could escape a characterization as an improper item of discretionary income." *In re Johnson*, 241 B.R. 394, 402 (Bankr. E.D. Tex. 1999). Nevertheless, the Court refused to apply a per se prohibition in that case, instead stating that 401(k) loan repayments, as well as voluntary contributions to 401(k) accounts, during the pendency of a Chapter 13 case "must be subject to intense scrutiny." *Id.* Thus, in the absence of any statutory guidance in this area, this Court joined the "overwhelming consensus among bankruptcy courts that a debtor's voluntary payment into a pension, savings, retirement or investment-type plan, such as a 401-k plan, is not an expenditure reasonably necessary for a debtor's maintenance and support during

---

preservation, and operation of such business."

the pendency of a Chapter 13 plan." *Id.* at 400.

However, "the times they are a-changin'." New provisions of the Bankruptcy Code introduced by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 free both 401(k) loan repayments and contributions from the scope of disposable income for the purposes of §1325(b)(1)(B). While admittedly such amendments do not become effective until on October 17, 2005, and are not controlling in the present case, they do provide strong support for the proposition that the Congress, as the author of the disposable income requirement applicable to this case, does not support the judicially-created construction of §1325(b)(1)(B) which finds that 401(k) loan repayments and contributions constitute an improper diversion of disposable income. Thus, the certainty about the impropriety of 401(k) loan repayments and contributions during the pendency of a Chapter 13 plan has been called into serious question.

Placed in the light of such developments, the Trustee's reliance upon the quickly-to-be-outdated 401(k) jurisprudence under §1325(b)(1)(B) in support of his objection to the existence of cause to extend the plan to 60 months, particularly when such cause is arguably for the purpose of providing a 100% payout to creditors, is substantially less compelling. It is widely recognized that the cessation of 401(k) loan repayments is likely to trigger adverse tax consequences to a debtor. Here, the Debtors are essentially arguing that their motivation to pay creditors in full, albeit over an extended time period, while avoiding the imposition of any adverse tax consequences arising from the cancellation of

their 401(k) loan repayments, constitutes sufficient cause to extend the time under their plan to make full payment on unsecured claims.  The Court agrees and concludes that the request to extend the plan to 60 months shall be granted.

Of course, even with the existence of cause to extend the term of the plan, the Debtors are still under a burden to demonstrate by a preponderance of the evidence that they have met the standard of full payment under §1325(b)(1)(A).  The primary issue regarding the full payment option is whether a plan proponent must pay interest to one or more of the unsecured creditors in order to satisfy the requirements of §1325(b)(1)(A).  The jurisprudence in this area is scarce, but at least one reported decision rejected the idea that §1325(b)(1)(A) required the payment of interest because the statute placed the phrase "as of the effective date of the plan" before the term "value," as opposed to using the phrase "value, as of the effective date of the plan" which it acknowledged as the phrase that Congress used in other sections to denote a present value requirement.  See *Matter of Eaton*, 130 B.R. 74, 78 (Bankr. S.D. Iowa 1991).  Though admittedly the amendments to §1325(b) have rendered the syntax of that subsection rather awkward, the Court finds such an analysis to be specious and unpersuasive.[5]

The better-reasoned view is that interest must be paid on deferred payments in order to fulfill the payment-in-full requirements of §1325(b)(1)(A).  Despite the stilted language arising from multiple amendments of this statute, it still remains that the present

---

[5] Surprisingly, that analysis is also adopted by a leading bankruptcy treatise.  See 8 COLLIER ON BANKRUPTCY ¶ 1325.08[3] at p.1325-49 (15th ed. rev. 2004).

value language in §1325(b)(1)(A) is virtually the same as that utilized by several other sections of the Bankruptcy Code which mandate the payment of interest in order that a creditor receive the value of his claim on the effective date of the plan.[6] As one leading Chapter 13 commentator has observed:

> To satisfy the payment-in-full option in §1325(b)(1)(A), the debtor must propose "as of the effective date of the plan" that the value of property to be distributed under the plan is not less than the amount of the objecting claim holder's claim. "As of the effective date of the plan" appears several other places in Chapter 13 and is universally interpreted to mean present value. In practical terms, present value translates into the payment of interest to compensate the claim holder for payment over time. Under the alternative in §1325(b)(1)(A), if the debtor cannot cash out the objecting unsecured claim holder on the effective date of the plan, then the debtor must pay the claim in full *with interest* through the plan.

2 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY ¶ 168.1 at p. 168-1 and 168-2 (3d ed. 2000 & Supp. 2002) (footnotes omitted and emphasis in original). See also 5 NORTON BANKRUPTCY LAW & PRACTICE 2d §122:10 at p.122-101 (1997 & Supp. 2005) ["If an allowed unsecured claim holder objects to confirmation and if the debtor desires to deal with the objection pursuant to Code §1325(b)(1)(A), the debtor will have to pay the present value of the allowed amount of the objecting unsecured claim holder's claim. If

---

[6] See Pearson, Jackson & Nohr, *Ending the Judicial Snipe Hunt: the Search for the Cramdown Interest*, 4 AM. BANKR. INST. L. REV. 35, 36 n.9 (1996) which finds a present value analysis necessary in §1325(b)(1)(A) and "virtually identical" with those appearing in §§1129(b)(2)(A)(i)(II), §§1129(a)(7)(A)(ii) and (C), §§1129(a)(9)(B)(i) and (C), §1225(b)(1)(A), §1225(a)(5)(B)(ii), §1325(a)(4), and §1325(a)(5)(B)(ii).

the Chapter 13 plan proposes to pay unsecured claims in deferred payments, Code § 1325(b)(1)(A) would require the payment of interest to the dissenting holder of an allowed unsecured claim."].

The Court concludes that the Debtors have met the payment-in-full requirements of §1325(b)(1)(A). The stream of payments to unsecured creditors, which by the Trustee's calculation totals $104,074.64 and begins in month 17 of the proposed plan, has a net present value greater than the $80,846.66 in aggregate unsecured claims to be paid under the plan.[7] Thus, under the plan as proposed, the holders of unsecured claims shall receive property, not just equivalent to, but greater than the amount of their claims. Because the Debtors are providing adequate compensation to unsecured creditors for the delay occasioned by the extension of the plan term to 60 months and in light of the Debtors' satisfaction of all other requirements for confirmation as set forth in §1325(a), the Court concludes that the Trustee's objection should be overruled and that the Debtors' First Amended Chapter 13 Plan should be confirmed.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[8] pursuant to Fed. R. Civ. P. 52, as incorporated into contested matters

---

[7] This net present value is based upon an available monthly plan payment of $2,335 [an amount equal to the monthly plan payment of $2,595 less the 10% trustee commission], discounted monthly using a monthly interest rate of .583%, which matches the annual interest rate of 7% paid under §1325(a)(5) to the holders of secured claims under the proposed plan.

[8] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.

in bankruptcy cases by Fed. R. Bankr. P. 7052 and 9014. A separate order will be entered which is consistent with this opinion.

        Signed on 9/30/2005

        *Bill Parker*

        THE HONORABLE BILL PARKER
        CHIEF UNITED STATES BANKRUPTCY JUDGE